**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0137n.06

Case No. 18-3522

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Mar 19, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMES E. GUINN, | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| GENERAL MOTORS, LLC, et al., | ) | OHIO |
| Defendants, | ) | |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY; RASHAD A. SALEEM, | ) | |
| Defendants - Appellees. | ) | |

BEFORE: CLAY, COOK, and LARSEN, Circuit Judges.

CLAY, Circuit Judge. Plaintiff James Guinn appeals from the district court's order denying Plaintiff's motion to supplement the administrative record and dismissing Plaintiff's complaint against Defendant Metropolitan Life Insurance Company ("MetLife") for life insurance benefits under the Employee Retiree Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. For the reasons set forth below, we **REVERSE** the decision of the district court.

**BACKGROUND**

**Factual History**

Julia Tolliver ("Tolliver"), formerly known as Julia Adams, was insured under the General Motors ("GM") Life and Disability Benefits Program for Hourly Employees (the "Plan"), an

employee welfare benefit plan governed by ERISA. The Plan provided Tolliver with a basic life insurance benefit of $28,133 through a policy issued by MetLife.

The Plan's Group Certificate contains provisions for selecting a beneficiary and for changing a beneficiary. The Group Certificate instructs:

> YOU make YOUR choice in writing on a form approved by us. This form must be filed with the records for THIS PLAN.

> YOU may change the Beneficiary at any time by filing a new form with us. YOU do not need the consent of the Beneficiary to make a change. When we receive a form changing the Beneficiary, the change will take effect as of the date YOU signed it. The change of Beneficiary will take effect even if YOU are not alive when it is received, provided such change of beneficiary is received prior to the payment of benefits.

(R. 29-2, Administrative Record, PageID # 464.)

In March 2002, Tolliver designated her husband, Mark Tolliver, now known as Rashad Saleem ("Saleem"), as her beneficiary under the Plan. Tolliver and Saleem divorced in 2008. On October 17, 2012, Tolliver submitted a new beneficiary designation form naming Plaintiff, her nephew, as her beneficiary. Tolliver correctly completed the section of the form relating to changing a beneficiary designation. However, she incorrectly filled out the second half of the form, which indicated that it should be completed "only if a trust ha[d] been created in an executed trust agreement." (R. 29-1, Administrative Record, PageID # 303.) While Tolliver did not check the box next to the "Trustee Delegation" option, she did write her name and address in the lines provided for listing the "Name of Trustee" and other trust information. Plaintiff's signature, which was not needed anywhere on the form, appears in the section for identifying the name of the trust. Tolliver correctly signed and dated the form at the bottom of the page. It is undisputed that it was a mistake for Tolliver to fill out the trust section of the form, because she did not have a trust. The instructions on the back of the form regarding the Trustee Delegation section state in bold font:

"This section should only be used if you have a legally drawn inter vivos trust agreement or an appropriate Trust(ee) is designated under your Last Will and Testament. If you complete this section, do NOT complete the Primary or Contingent Beneficiary sections." (*Id.* at PageID # 307.)

On October 23, 2012, MetLife sent Tolliver a letter regarding her attempt to change her beneficiary. The letter stated that MetLife had received Tolliver's request to change her beneficiary designation but that MetLife was "unable to process [her] request because the form contain[ed] incomplete or missing information." (*Id.* at PageID # 305.) The letter explained that Tolliver could submit a new beneficiary designation form either by using the online portal or by completing the beneficiary designation form that was enclosed in the letter. The letter cautioned, "[p]lease do not use the Trust area unless you are making that designation." (*Id.*) Finally, it stated, "Return the signed and dated Beneficiary Designation form to our office in the enclosed envelope. Retain a copy for your records. After the acceptable form has been made part of your permanent file, a letter of confirmation will be mailed to your address of record." (*Id.*)

There is no indication that Tolliver, who died on May 27, 2016, ever responded to the letter. After Tolliver's death, Plaintiff made a claim for the Plan Benefits. MetLife denied Plaintiff's claim in a letter, explaining that:

> [The October 17, 2012] designation was never accepted and, therefore, is invalid. A correspondence explaining why such designation was not accepted was sent to the decedent on October 23rd, 2012, along with a new beneficiary designation form for a valid completion. MetLife did not receive any updated designation.
>
> According to our records, the latest valid beneficiary designation on file that was completed by the decedent on March 26th 2002, does not name you as the beneficiary of the Plan benefits.
>
> Therefore, based on the record before MetLife, we must deny your potential claim.

(*Id.* at PageID # 310–11.) The letter also explained how Plaintiff could proceed with an appeal of the decision if he chose to do so. Plaintiff subsequently appealed MetLife's decision under the Plan's appeal procedure.

Plaintiff's attorney contacted MetLife and the Plan administrator on October 26, 2016, and again on December 8, 2016, requesting copies of the applicable Plan documents and other relevant information. MetLife sent Plaintiff a "complete copy" of the applicable records on December 2, 2016, but apparently it did not include the controlling Plan document, which instructed Plan participants how to change beneficiaries. In the December 8 letter, Plaintiff also asked MetLife to refrain from deciding the appeal, which had been initiated by the local Benefit Union Representative, until Plaintiff received the requested documents. However, MetLife decided the appeal on December 15, 2016. MetLife determined that the 2012 beneficiary designation form "could not be used for claim payment purposes" because it had been rejected as improperly completed, and because Tolliver never returned a properly completed form. (*Id.* at PageID # 371.)

**Procedural History**

Plaintiff brought this action against MetLife, GM, and Saleem on January 31, 2017. Plaintiff sought recovery of the Plan Benefits under 29 U.S.C. § 1132(a) and penalties from GM under 29 U.S.C. § 1132(c)(1) based on GM's failure to produce the requested Plan documents, as well as a declaratory judgment that Tolliver had validly designated Plaintiff as her beneficiary.[1] Plaintiff and GM subsequently reached a settlement, and GM was dismissed from the case.

On December 18, 2017, Plaintiff moved to supplement the Administrative Record and for judgment on the Administrative Record. Plaintiff sought to introduce affidavits from himself and Nelli Johnson, Guardian of the Estate of Julia Tolliver, into the record. On May 10, 2018, the

---

[1] Saleem, who is named as a co-defendant, has not responded to the complaint.

district court denied Plaintiff's motion and dismissed Plaintiff's complaint, finding that no issues remained for it to address. This appeal followed.

## DISCUSSION

### Standard of Review

This Court reviews the denial of Plaintiff's claim for benefits *de novo*, including any legal conclusions or determinations made by MetLife or the district court. *Wilkins v. Baptist Health Care Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).

### I.     Strict Compliance with the Plan's Requirements

ERISA requires plan administrators to "discharge [their] duties with respect to a plan . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 104(a)(1)(D). In the Sixth Circuit, ERISA supplies the rule of law governing the designation of beneficiaries. *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126, 130 (6th Cir. 1996). "ERISA plans are to be administered according to their controlling documents," and "courts need look no further than the plan documents to determine the beneficiary." *McMillan v. Parrott*, 913 F.2d 310, 312 (6th Cir. 1990); *see also Unicare Life & Health Ins. Co. v. Craig*, 157 F. App'x 787, 791 ("We have consistently held that Section 1104(a)(1)(D) of ERISA establishes 'a clear mandate that plan administrators follow plan documents to determine the designated beneficiary.'" (quoting *Pressley*, 82 F.3d at 130)). "Under this court's bright line rule, therefore, we determine the insured's intent by the designation on file at the time of the insured's death." *Craig*, 157 F. App'x at 791 (citing *McMillan*, 913 F.2d at 312).

The Plan's Group Certificate states four requirements for a participant to designate a beneficiary. A participant must: 1) choose the beneficiary in writing, 2) on a form approved by MetLife, and 3) sign and date the form; and 4) file the form with the records for the applicable

Plan. The parties do not dispute that Tolliver chose Plaintiff as her beneficiary in writing or that she signed and dated the form. MetLife argues that Tolliver's attempt to make Plaintiff her beneficiary failed because the form was not "approved by [MetLife]" or "filed with the records for [the Plan]." (R. 29-2, Administrative Record, PageID # 464.)

### 1. Approval by MetLife

To change her beneficiary under the Plan, Tolliver needed to choose a beneficiary "on a form approved by [MetLife]." Plaintiff argues that this requirement "refers to the actual form upon which the chosen beneficiary must be made rather than a right to accept or reject a designation submitted on the approved form." (Appellant Reply Br. at 2.) In other words, Plaintiff argues that "approved by [MetLife]" simply means that MetLife has designated ("approved") a particular form for Plan participants to use to change beneficiaries. Plaintiff's interpretation would mean that Tolliver satisfied this requirement, because she wrote her beneficiary designation on the correct form that MetLife had chosen for changing beneficiaries. A district court considering identical Plan language reached a similar conclusion in *Metro. Life Ins. Co. v. Burns*, 2012 U.S. Dist. LEXIS 15332, at *5 (E.D. Mich. Jan. 23, 2012). In that case, MetLife rejected a decedent's change of beneficiary form when the decedent included the new beneficiary's name but failed to check a box on the form indicating that the change applied to all benefit plans he may have had. *Id.* at *2. The district court in that case did not specifically discuss the "approved by" standard, but it found that the decedent had "complied with the literal terms of the plan" despite the decedent's error in completing the form. *Id.* at *5; *see Metro. Life Ins. Co. v. Burns*, 2012 U.S. Dist. LEXIS 15337, *2 (E.D. Mich. Feb. 8, 2012) (adopting magistrate judge's analysis).

Other language in the Group Certificate supports Plaintiff's interpretation. The Plan states, "[w]hen we receive a form changing the Beneficiary, the change will take effect as of the date

YOU signed it." (R. 29-2, Administrative Record, PageID # 464.) It would defy logic for the form to simultaneously take effect when MetLife receives it and to depend on some sort of further review by MetLife in order to become effective. *Cf. Pedrick v. Roten*, 70 F. Supp. 3d 638, 650 n.20 (D. Del. 2014) (noting that, under a different beneficiary plan, "a change takes effect when the notice is signed, not when it is deemed satisfactory").

In contrast, MetLife argues that the phrase "approved by [MetLife]" requires something more than simply filling out a form that MetLife has approved for this purpose. Under this interpretation, "approved by" refers to the approval process after the form has been received, requiring the form to be completed in a manner approved by MetLife. MetLife's interpretation of this phrase would mean that Tolliver did not satisfy this requirement, because she filled out the form improperly and MetLife rejected it as a result.

We find Plaintiff's interpretation to be a more plausible reading of the phrase "on a form approved by [MetLife]." A natural reading of the Group Certificate would indicate that all it requires for a change of beneficiary is for a Plan participant to enter the required information on a form that MetLife selected for that purpose. To find that a Plan participant's attempt to change her beneficiary may be rejected when, as here, the participant inadvertently added additional information to the form, would be to impose additional requirements that are not present in the Group Certificate. Moreover, this interpretation is consistent with the Group Certificate's statement that the change of beneficiary will take effect when MetLife receives the form—a contrary reading would create a strange time warp through which the change of beneficiary would take effect even before all the requirements to change a beneficiary had been satisfied.[2] Therefore,

---

[2] Even if we found both of the parties' interpretations reasonable, the doctrine of *contra proferentum*, which "provides that ambiguous contract provisions in ERISA-governed insurance contracts should be construed against the drafting party," would have us rule in favor of Plaintiff on this issue. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 n.7 (6th Cir. 1998) (en banc).

we find that Tolliver strictly complied with the Plan's requirement that she submit her change of beneficiary designation "on a form approved by [MetLife]."

### 2. *Plan Filing Requirement*

The parties also dispute whether the change of beneficiary form Tolliver completed was "filed with the records for [the Plan]." Plaintiff argues that "the only conceivable way" to satisfy this requirement was for Tolliver to submit the completed form to her benefits office. (Appellant Br. at 17.) Plaintiff finds support in several district court cases that considered similar language and found "filed" to require only that the Plan participant send the properly completed form to the Plan administrator. *See Hartford Life & Accid. Ins. Co. v. Hayes*, 2014 WL 4916200, at *3 (M.D. Pa. Sept. 30, 2014) ("[S]ending the form is the operative action necessary to effectuate a change in beneficiary."); *Schleicher v. Williams*, 2009 WL 1616711, at *4 (N.D. Ind. June 5, 2009); *Burns*, 2012 U.S. Dist. LEXIS 15332, at *5. Therefore, according to Plaintiff, "[b]ecause MetLife indisputably 'received' the Form, [Tolliver] indisputably 'filed' it." (Appellant Reply Br. at 7.)

MetLife counters that "filed" requires that the form be approved and recorded in the plan file for the specific participant, not merely that the participant submit the form to MetLife. Under MetLife's interpretation of this requirement, Tolliver's change of beneficiary form was rejected by MetLife and was never "'filed' with the records for the Plan maintained by MetLife, and [Plaintiff] therefore did not become [Tolliver]'s 'beneficiary of record.'" (Appellee Br. at 15.)

The same logic from the previous section applies here. The Group Certificate states, "YOU may change the Beneficiary at any time by filing a new form with us." We interpret this language to mean that "filing" refers to the Plan participant's act of submitting the completed form, not a post-submission process to be completed by MetLife. It would again be illogical for this term to confer on MetLife the discretion to reject forms after receiving them by declining to literally place

them in the correct file of the Plan participants, when the Plan also states that change of beneficiary forms take effect when they are received. The Plan requires participants seeking to change their beneficiaries to file with MetLife the proper form, containing the new choice of beneficiary, the signature of the Plan participant, and the date the form was completed. We will not interpret the Group Certificate to grant MetLife discretion that is simply not authorized by the Plan's language. By submitting her completed form to MetLife, Tolliver strictly complied with the Plan's requirement to file the form with the records for the Plan.

## II.     The Affidavits

Because we hold that Tolliver strictly complied with the Plan's requirements to change her beneficiary, the issue of whether the district court properly excluded Plaintiff's affidavits is moot.

## CONCLUSION

Because Tolliver chose her beneficiary in writing, on a form approved by MetLife, signed and dated the form, and filed the form with the Plan administrator, we find that she successfully changed her beneficiary under the requirements of the Plan. We therefore **REVERSE** the decision of the district court.